## Parente v. Parente

*Fox, Differ, DiGiacomo & Lowe,* for plaintiff.
*Anthony J. Giangiulio,* for defendant.

FORREST, P. J., January 14, 1963.—Plaintiff-wife has petitioned for leave to discontinue this divorce action for the sole reason that since the institution of suit she has suffered a paralyzing stroke, which has rendered her unable to work and which will make her a public charge if she is divorced.

Plaintiff instituted the action on June 24, 1960. An appearance was entered for defendant. On September 30, 1960, on motion of plaintiff's attorney, the court appointed a master. The master held a hearing on October 28, 1960, at which time plaintiff testified. Defendant did not appear at the hearing. The master gave full credence to plaintiff's testimony and concluded in his report filed on November 15, 1960, that

she was entitled to a divorce on the grounds of cruelty and indignities. No exception was taken to the master's report.

From the briefs filed by present counsel for plaintiff and for defendant, it appears that early in December, 1960, Mr. Nelson, then attorney for plaintiff, requested that Judge Groshens, who had the papers before him for final determination of this action, withhold entry of a final decree because of collateral problems regarding the health of plaintiff and her ability to support herself and her children.

In June, 1961, plaintiff suffered a stroke which paralyzed her left arm and left her without the use thereof, and which stroke also impaired the use of her left leg. She has regained 75 percent of normal use of her left leg and now employs a cane in order to walk. The prognosis regarding her arm is poor. Medical expert opinion is that the leg has reached the peak of expectable recovery. It is doubtful whether plaintiff is able to obtain employment and remain so engaged as to support and maintain herself.

On August 30, 1962, Mr. Nelson withdrew his appearance as counsel for plaintiff and Mr. Lowe entered his appearance as such counsel.

On August 31, 1962, plaintiff filed the petition to discontinue the action. "The right to discontinue is in the sound discretion of the court. Ordinarily permission to discontinue will be granted unless the other party will suffer a disadvantage or it is not sought in good faith or where the ground is adultery: 3 Freedman, Law of Marriage and Divorce in Pennsylvania, §667 ('2d ed. 1957); Danna v. Danna, 5 D. & C. 2d 141, 144 (1955)": Ashton v. Ashton, 74 Montg. 117, 118 (1957). "Good faith" as used in the above context refers to sincere desire for a reconciliation and resumption of cohabitation with the spouse: Ashton v. Ashton, supra.

This is why the cases say that the privilege of discontinuance should not be "carelessly granted": Kettering v. Kettering, 46 Pa. C. C. 514, 516 (1917). Where, as here, no question of any possible reconciliation is presented and financial considerations solely motivate plaintiff's present application, the facts do not warrant the exercise of the court's discretion in plaintiff's favor. As was stated in Shinkman v. Shinkman, 72 N.Y.S. 2d 579, 580 (1947) : " 'The time-honored privilege of a woman to change her mind may not be permitted in this case.' "

For the foregoing reason, it is unnecessary to consider whether it is too late for plaintiff to discontinue suit. However, Freedman, op. cit., §667, p. 1285, cites Pa. R. C. P. 230(b) as applicable. That rule provides: "After a plaintiff has rested his case in chief he may not suffer a voluntary non-suit without leave of court and *cannot do so after the close of all the evidence*." (Italics supplied.) The evidence in this case closed at the conclusion of the master's hearing on October 28, 1960.

And now, January 14, 1963, the rule to show cause why plaintiff should not be permitted to discontinue the action is discharged and the petition is dismissed.